UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BIOGENESIS CHURCH, INC., | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 16-11628 |
| UNITED STATES OF AMERICA, | ) ) ) ) | |
| Defendant. | ) ) ) ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                 November 13, 2017

### I.      Introduction

Plaintiff Biogenesis Church, Inc. ("Biogenesis Church") has filed this lawsuit against Defendant the United States of America (the "United States") alleging a wrongful levy and seeking declaratory and injunctive relief, as well as damages under 26 U.S.C. § 7426(a)(1) and (b)(2). D. 1. The United States has moved for summary judgment on Count II of the complaint.[1] D. 22. For the reasons stated below, the Court ALLOWS the motion.

### II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the

---

[1] The parties previously had previously settled Count I, making Count II the only remaining claim in this case. D. 23 at 3.

1

outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

### III. Factual Background

The following facts are taken from the parties' Rule 56.1 statements and accompanying documents and are undisputed unless otherwise noted. Daniel H. George, Jr. ("George") is a self-taught chemist who has created his own health supplements. D. 29, ¶ 1.[2] On April 3, 2003, George was indicted on four counts of tax evasion for tax years 1996-1999 and four counts of using a false social security number. D. 29, ¶ 3. George was found guilty on all four counts of tax evasion. D. 29, ¶ 4.

---

[2] The parties did not file separate statements of material facts and responses thereto, but instead included them in their respective memoranda of law, D. 23; D. 29. The Court hereinafter cites to Biogenesis Church's response to the United States' statement of material facts, D. 29, when referencing the undisputed material facts.

2

### A. The Biogenesis Foundation

On May 14, 2003, George established the Biogenesis Foundation, Inc. ("Biogenesis Foundation"). D. 29, ¶ 8. George was the sole incorporator and, as of its 2016 annual report, was still listed as the president, treasurer, clerk, and director of the Biogenesis Foundation. D. 29, ¶¶ 8, 13. George was also the only person with signatory authority for the Biogenesis Foundation's checking account. D. 29, ¶ 15. George transferred $7.7 million[3] of his own money into a Biogenesis Foundation bank account, for which George received no consideration (the "2003 transfer"). D. 29, ¶¶ 9-10. After the 2003 transfer, George did not own any assets except for a house at 1 Warren Court, Rockport, Massachusetts (the "Warren Court property"), which in 2016 had a tax value of $281,900 and social security disability payments he has received since 1976. D. 29, ¶ 11. The Biogenesis Foundation's address was the Warren Court property. D. 29, ¶ 14.

George has control over Biogenesis Foundation's funds and responsibility for distributing them. D. 29, ¶ 40. While operating the Biogenesis Foundation, George paid his own legal fees out of funds held in its bank account. D. 29, ¶ 16. Between 2003 and 2008, Biogenesis Foundation spent $1,504,564 on George's legal fees. Id. In 2008, George also used funds from the Biogenesis Foundation account to pay for improvements to the Warren Court property, structured as a loan to George with a balance of $218,205, as well as utility bills and property taxes. D. 29, ¶¶ 17-18.

### B. IRS Begins Civil Tax Assessment of George

After George was released from prison in 2007, and while he was on supervised release in 2010, the United States alleged that George violated the terms of his supervised release due to a failure to pay the fine that was a part of his sentence and his continuing lack of cooperation with

---

[3] The United States expressed some uncertainty as to this amount, but Biogenesis Church appears to confirm that figure in its brief. See D. 29, ¶¶ 9, 12; id. at 24.

the IRS. D. 29, ¶¶ 19-20. On November 4, 2010, George's counsel stated at a supervised release revocation hearing that the IRS was reviewing George's tax records to issue an assessment. D. 29, ¶ 21. On October 10, 2012, the IRS issued a statutory notice of deficiency (the "Notice of Deficiency") to George, informing him that the IRS had determined that he owed $2,165,892 for tax years 1995-2002, and $1,624,419 in tax penalties. D. 29, ¶ 23.

### C. The Biogenesis Church

On June 20, 2012, George founded Biogenesis Church as the sole incorporator. D. 29, ¶ 25. George is Biogenesis Church's president and its business address is the Warren Court property. D. 29, ¶¶ 26-27. On October 11, 2012, George transferred $7,559,861.16 from Biogenesis Foundation's account to a new Biogenesis Church account, for which there was no consideration (the "2012 transfer"). D. 29, ¶¶ 28-29. Except for $10 remaining in its account, after the 2012 transfer, Biogenesis Foundation had no property and essentially ceased operations as Biogenesis Church took over, in George's own words, "the exact same work." D. 29, ¶¶ 30-31. George has control over Biogenesis Church's funds and responsibility for distributing them. D. 29, ¶ 40. George is the only signatory for Biogenesis Church's bank account. D. 29, ¶ 38. George used funds from the Biogenesis Church account to make payments on behalf of the Biogenesis Foundation. D. 29, ¶ 32. Biogenesis Church, similarly to Biogenesis Foundation, paid utility bills for the Warren Court property owned by George and does not pay rent for using the house. D. 29, ¶¶ 41-43.

### D. IRS Issues Levy to Biogenesis Church

George challenged the Notice of Deficiency in the tax court and, after a trial, the court upheld the assessment. D. 29, ¶¶ 33-34. George paid for his legal fees in the tax case out of Biogenesis Foundation and Biogenesis Church accounts from 2014-2015. D. 29, ¶ 37. On June

4

27, 2016, the IRS issued a notice of levy to East Boston Savings Bank, attaching funds held in Biogenesis Church's name, for George's 1995-2002 tax liability. D. 29, ¶¶ 44-45. The parties agree that the IRS received $7.8 million, and that as of September 12, 2016, George's tax liability was $8,082,607.24. D. 29, ¶¶ 44, 46.

IV.     **Procedural History**

Biogenesis Church instituted this action on August 10, 2016. D. 1. The parties proceeded with discovery. The United States has now moved for summary judgment. D. 22. The Court heard the parties on the pending motion and took it under advisement. D. 32.

V.      **Discussion**

   A.     **Elements/Burden of Proof**

There appears to be no First Circuit precedent establishing the burden of proof in a wrongful levy case. The Court therefore adopts the burden-shifting approach applied by other circuits: (1) the plaintiff must show that the IRS filed a levy against property in which the plaintiff has some interest; (2) the burden then shifts to the United States to prove a nexus between the property and the taxpayer[4]; and (3) the burden then shifts back to the plaintiff, who must show that the levy was wrongful, e.g., that the levied property did not belong to the taxpayer. See Oxford Capital Corp. v. United States, 211 F.3d 280, 283 (5th Cir. 2000); LiButti v. United States, 107 F.3d 110, 113 (2d Cir. 1997); Sec. Counselors, Inc. v. United States, 860 F.2d 867, 869–70 (8th Cir. 1988); PBV, Inc. v. Rossotti, 178 F.3d 1295 (6th Cir. 1999) (unpublished opinion). To establish a nexus, the United States "may assert fraudulent conveyance as a defense in a wrongful

---

[4] Biogenesis Church argues that when the burden shifts, the United States must show the nexus between the property and the taxpayer by substantial evidence, rather than a preponderance of the evidence. For the reasons stated further in this Memorandum and Order, the Court concludes that the United States has met its burden in establishing a nexus, whether the burden of proof is by substantial evidence or a preponderance of the evidence.

5

levy action." Towe Antique Ford Found. v. IRS, 791 F. Supp. 1450, 1457 (D. Mont. 1992), aff'd, 999 F.2d 1387 (9th Cir. 1993); see Hatchett v. United States, 330 F.3d 875, 886 (6th Cir. 2003) (unpublished opinion) (collecting cases). Biogenesis Church's interest in the property is conceded. D. 23 at 12. The IRS may also assert a defense to a wrongful levy claim by showing a fraudulent nominee relationship with the taxpayer. See Berkshire Bank v. Town of Ludlow, Mass., 708 F.3d 249, 251–53 (1st Cir. 2013); Dalton v. Commissioner, 682 F.3d 149, 157 (1st Cir. 2012). The United States asserts both theories. Therefore, the burden shifts to the United States to establish a nexus through a fraudulent transfer or fraudulent nominee relationship; and if that burden is met, it shifts back to Biogenesis Church to show that in spite of the nexus, the levy was wrongful.

### B. The United States Has Established a Nexus and Biogenesis Has Not Shown the Levy Was Wrongful

The United States argues that the transfers by Biogenesis Foundation to Biogenesis Church, effectuated by George, were constructively fraudulent. Massachusetts law has codified the Uniform Fraudulent Transfer Act ("UFTA"), Mass. Gen. L. c. 109A, which provides two similar bases upon which a transfer can be constructively fraudulent.

*1. The 2003 Transfer Was Constructively Fraudulent*

Under § 5(a) of Chapter 109A, in relevant part, "[a] transfer made or obligation incurred by a debtor is [constructively] fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." Mass. Gen. L. c. 109A, § 5(a). Section 5(a)(2) "applies when the debtor has an unreasonably small amount of remaining assets or an intent or reasonable belief that 'the transfer would render [him]

6

insolvent.'" Brennan v. Ferreira, No. 16-cv-12536-WGY, 2017 WL 1754762, at *3 (D. Mass. May 2, 2017) (quoting Silica Tech, L.L.C. v. J–Fiber, GmbH, No. 06-10293-WGY, 2009 WL 2579432, at *17 (D. Mass. Aug. 19, 2009)).

Section 6(a), in contrast, only applies to a creditor "whose claim arose before the transfer was made or obligation was incurred," but similarly defines transfers or obligations as fraudulent if "incurred . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Mass. Gen. L. c. 109A, § 6(a). Section 6(a) does not require a showing of the debtor's objectively reasonable belief with respect to his insolvency.

The parties do not dispute that the 2003 transfer occurred, D. 29, ¶ 9, nor that there was no consideration for the 2003 transfer, id., ¶ 10. The United States argues that when George made the 2003 transfer, he was insolvent, or for purposes of § 5(a)(2) reasonably should have believed he would be insolvent because of his preexisting tax liability from his 1995-2002 taxes. The United States further contends that George had notice of liabilities he would not be able to pay after his indictment for tax evasion.

In opposition, Biogenesis Church makes two arguments under § 5(a)(2). First, Biogenesis Church contends that the United States must show that George had knowledge, established by an assessment, that he owed the tax liability. In other words, Biogenesis Church argues that the United States must show that George was aware of the fact and nature of his insolvency due to the tax liability for the 2003 transfer to have been constructively fraudulent and because his civil tax liability was not assessed until 2012, the 2003 transfer was not constructively fraudulent.

This issue precludes summary judgment as to § 5(a)(2). "Whether a tax liability was reasonably foreseeable falls within the province of the trier of fact." Frank Sawyer Tr. of May

7

1992 v. Commissioner, 712 F.3d 597, 609 (1st Cir. 2013) (internal quotation marks omitted) (quoting United States v. Rocky Mountain Holdings, Inc., 782 F. Supp. 2d 106, 121 (E.D. Pa. 2011)). While in Frank Sawyer Tr. of May 1992, 712 F.3d at 599, the taxes had not yet become due, id., for purposes of the reasonable foreseeability requirement the timing of the tax liability is not a distinguishing factor, since § 5(a) does not distinguish between "whether the creditor's claim arose before or after the transfer was made or the obligation was incurred," Mass. Gen. L. c. 109A, § 5(a).

Section 6(a) however, the United States' alternative basis for summary judgment, does not require a showing of intent or objectively reasonable belief of insolvency to make a transfer constructively fraudulent. Biogenesis Church argues that § 6(a) cannot apply, because the IRS was not a creditor of George before the 2003 transfer, because it did not complete its tax assessment until 2012. This argument is unavailing. "[T]ax liabilities, though unassessed, are deemed obligations due and owing at the close of the taxable year." Edelson v. Commissioner, 829 F.2d 828, 834 (9th Cir. 1987); see 26 U.S.C. § 6151(a); Holywell Corp. v. Smith, 503 U.S. 47, 52 (1992); United States v. Siceloff, 451 F. App'x 183, 186 (3d Cir. 2011); United States v. Sarubin, 507 F.3d 811, 814 (4th Cir. 2007); United States v. Payne, 978 F.2d 1177, 1179 (10th Cir. 1992); United States v. Russell, 998 F.2d 1001 (1st Cir. 1993) (unpublished opinion). The IRS, therefore, was George's creditor for tax years 1995-2002 as of each subsequent April 15, see Payne, 978 F.2d at 1179, the latest of those being April 15, 2003, prior to the 2003 transfer. The United States has satisfied this element of § 6(a).

The United States has also established that there is no genuine issue of material fact that by executing the 2003 transfer, George "was insolvent at that time or [] became insolvent as a result of the transfer or obligation." Mass. Gen. L. c. 109A, § 6(a). While Biogenesis Church

8

argues there is a question of fact as to whether George's ownership of the Warren Court property would have satisfied his tax liabilities, preventing the Court from determining that George was insolvent due to the 2003 transfer at summary judgment, this argument fails. At the time of the 2003 transfer, the Warren Court property was George's only remaining asset, which in 2016 had a tax value of $281,900. D. 29, ¶ 11. George's tax liability as of April 15, 2003, before penalties and interest, for 1995-2002 was $2,165,892. D. 29, ¶ 23; D. 23-21 at 1. Furthermore, by April 15, 2003, George had been indicted for tax evasion accusing him of concealing upwards of $800,000 in taxable income for the years 1995-1999 alone, D. 23-3 at 2, which would have resulted in a tax liability, before interest and penalties, of $284,729, D. 30-1, ¶ 9. Biogenesis Church does not point to any specific, admissible facts in support of its argument, instead suggesting some uncertainty about the property's value. Rather, its assertions are "conclusory and wholly unsupported." 4 MVR, LLC v. Warren W. Hill Constr. Co., Inc., No. 12-cv-10674-DJC, 2016 WL 4775451, at *14 (D. Mass. Sept. 13, 2016). Furthermore, Biogenesis Church's argument is "contradicted by the substantial evidence in the record demonstrating . . . insolvency." Id. As the United States points out, the Warren Court property, George's only asset at the time of the 2003 transfer, D. 29, ¶ 11, received "improvements" costing $218,205 in or around 2008, when the Biogenesis Foundation declared this amount as a loan to George in its 2008 tax return, id., ¶ 17. To the extent the record suggests any possibility for variation in the Warren Court property's value, it suggests that the house would be worth more, and not less, in 2016 than it was worth in 2003. D. 28-7 at 94-95. For all of these reasons, the 2003 transfer was constructively fraudulent.

    2.    *Biogenesis Church Was a Subsequent Transferee of the 2003 Transfer*

George offers a broad swath of evidence from his prior trial before the tax court, in which the court found that the Biogenesis Foundation and Biogenesis Church were George's alter egos,

9

D. 29 at 36. He argues that this holding is limited to the Biogenesis Foundation and Biogenesis Church's activities before 2003, and that the bases for the tax court's decision have been rectified, making the entities no longer George's alter egos.

This argument is not persuasive. Even if the Court were to credit Biogenesis Church's argument that it now operates by the necessary corporate formalities, Massachusetts law does not require the United States to show independently that both the 2003 and 2012 transfers were constructively fraudulent. Rather, the United States argues, in line with Massachusetts law, that it must show that the 2003 transfer from George to the Biogenesis Foundation was constructively fraudulent, and that the 2012 transfer from the Biogenesis Foundation to Biogenesis Church was a transfer to a "subsequent transferee," against whom creditors are entitled to relief so long as the subsequent transferee was not "a good faith transferee or obligee who took for value or from any subsequent transferee or obligee." Mass. Gen. L. c. 109A, § 9(b)(2). In other words, so long as the United States shows Biogenesis Church did not receive the 2012 transfer in good faith, for value, or from an initial subsequent transferee, it was entitled to recover, in this instance by levy, the money held by Biogenesis Church on the basis of the initial 2003 transfer. See Bakwin v. Mardirosian, 467 Mass. 631, 646 (2014) (affirming judgment against subsequent transferee on the basis of jury verdict that defendant did not "receive[] transfer of the brokerage account either in good faith or for value").

When determining whether a subsequent transferee received the transfer in good faith, courts have looked to whether evidence in the record indicates that the subsequent transferee had "actual or constructive knowledge" of the nature of the transfer. Frank Sawyer Tr. of May 1992 v. Commissioner, 107 T.C.M. (CCH) 1316 (T.C.), opinion supplemented on reconsideration, 107 T.C.M. (CCH) 1621 (T.C. 2014); see McBirney v. Paine Furniture Co., No. 960031, 2003 WL

10

21094555, at *18–19 (Mass. Super. Mar. 31, 2003). The Court concludes that the record is replete with evidence, not rebutted with any specific facts by Biogenesis Church, that it was not a good faith subsequent transferee. George incorporated Biogenesis Church on June 20, 2012. D. 29, ¶ 25. From at least 2010 until October 10, 2012, the IRS had been conducting a civil tax assessment of George after he was released from prison. D. 29, ¶¶ 19-23. Having formed Biogenesis Church on June 20, 2012, id., ¶ 25, on October 11, 2012, George executed the 2012 transfer from Biogenesis Foundation to Biogenesis Church, id., ¶ 28. The 2012 transfer was not made for reasonably equivalent value. In fact, it was made for no value. Id., ¶ 29.

Furthermore, Biogenesis Foundation essentially ceased operating when Biogenesis Church was incorporated and Biogenesis Church does not dispute that it is "basically the same organization" as Biogenesis Foundation doing "the exact same work." Id., ¶ 31. George was listed as every corporate officer of Biogenesis Foundation, id., ¶ 13, and is listed as Biogenesis Church's president, id., ¶ 27. "The general rule under Massachusetts law is that the knowledge of directors, officers and agents acquired in the course of official duties is imputed to the corporation." McBirney, 2003 WL 21094555, at *18 (internal quotation marks omitted) (quoting Nat'l Credit Union Admin. v. Ticor Title Ins. Co., 873 F. Supp. 718, 726 (D. Mass. 1995)). Considering the lack of any consideration for the 2012 transfer, imputing George's knowledge of his own indictment and conviction for tax evasion and an ongoing civil tax assessment to both Biogenesis Foundation and Biogenesis Church, as well as his knowledge that the 2003 transfer had rendered him insolvent, and George's payment of his criminal and civil legal fees from both organizations, the record shows that Biogenesis Church could not have accepted the 2012 transfer in good faith and it has pointed to no facts in the record that raise a genuine issue of disputed fact as to this matter. The United States has shown that Biogenesis Church was a subsequent transferee of a

constructively fraudulent transfer and has thus shown a nexus between George and Biogenesis Church. Furthermore, for the same reasons laid out above, Biogenesis Church has not met its burden in rebutting the United States' arguments by showing that the levy was wrongful because the property did not belong to George. Accordingly, Biogenesis Church's wrongful levy claim cannot be sustained as a matter of law.

### C. Biogenesis Church as Fraudulent Nominee

The United States argues in the alternative that Biogenesis Church held the levied funds as George's fraudulent nominee. The First Circuit has adopted an eight-factor test for courts to determine whether a nominee relationship exists: "[1] the lack of consideration paid by the titleholder; [2] a close relationship between the taxpayer and the titleholder; [3] the control exercised over the property by the taxpayer while title is held by another; [4] the use and enjoyment by the taxpayer of the property titled to another; [5] lack of interference in taxpayer's use of property by the titleholder; [6] the use of property or funds titled to another to pay the taxpayer's personal expenses; [7] whether the taxpayer exercises dominion and control over the property, or treats it as if it belongs to him; [8] whether title was placed in the record owner's name as a result of or in anticipation of the taxpayer's liability." Berkshire Bank, 708 F.3d at 252–53 (quoting In re Callahan, 442 B.R. 1, 6 n.5 (D. Mass. 2010)).

Biogenesis Church asserts that the United States has not shown that the levied assets are "subject to a man's unfettered command and that he is free to enjoy at his own option." Miedaner v. Commissioner, 81 T.C. 272, 280 (1983). At a minimum, this case is inapposite. In Miedaner, the petitioner was challenging the application of assets held by the church he had founded to his personal tax liability where the Tax Court found that the church operated as his alter ego. Whether this is the correct test to be applied in determining whether an entity is the alter ego of a taxpayer,

"the merits of the tax assessment are not subject to attack" as part of a wrongful levy claim brought by a third party. 26 U.S.C. § 7426(c); Middlesex Sav. Bank v. Johnson, 777 F. Supp. 1024, 1030 (D. Mass. 1991). The Court considers this concept under the rubric of the third Berkshire Bank factor, but no one factor considered under this test is determinative in assessing whether Biogenesis Church is merely George's nominee. Rather, "courts focus on the totality of the circumstances without regarding any single factor as the sine qua non of a nominee relationship." Berkshire Bank, 708 F.3d at 253 (quoting Dalton, 682 F.3d at 158).

Biogenesis Church further contends, without factual support, that the Berkshire Bank factors do not support a finding that it was George's nominee. As to the first factor, Biogenesis Church attempts again to argue that lack of consideration was because no liability yet existed. As explained above, this argument is unpersuasive because, as discussed above, tax liability accrues from the date the taxes became due. As to the second factor, Biogenesis Church contends that George's consideration-less transfer was in fact a charitable contribution to an organization at which he "worked."

Biogenesis Church has not raised any genuine issue of disputed fact with respect to any of the Berkshire Bank factors. There was no consideration for the 2012 transfer. D. 29, ¶ 28. George, as the only signatory for the Biogenesis Church account, D. 29, ¶ 38, with responsibilities to manage and disburse its funds, D. 29, ¶ 40, had control and/or dominion over the property, and further did not face any interference. George did not just work at Biogenesis Church. He is its founder, president and sole financial signatory, which other courts have considered indicative of a nominee relationship. See Nassar Family Irrevocable Tr. v. United States, 13 Civ. 5680, 13 Civ. 8174, 2016 WL 5793737, at *11-12 (S.D.N.Y. Sept. 30, 2016); United States v. N. States Invs., Inc., 670 F. Supp. 2d 778, 789 (N.D. Ill. 2009). George used and enjoyed the property, including

13

for personal expenses including his legal fees, D. 29, ¶ 37, and utility bills, D. 29, ¶¶ 41-43. Whether other individuals participate in Biogenesis Church's non-financial activities and operations, as Biogenesis Church stressed at the motion hearing, does not alter the Court's determination that a nominee relationship exists due to George's unfettered control over its finances and benefit in the form of rent and utility bills for his personal home. See, e.g., The Colby B. Found. v. United States, No. Civ. 96-3073-CO, 1997 WL 1046002, at *21 (D. Or. Oct. 22, 1997), aff'd sub nom. Colby B. Found. v. United States, 166 F.3d 1217 (9th Cir. 1999). Finally, while there are reasonable inferences to be drawn in the United States' favor as to the final factor, fundamentally a question of intent, any uncertainty in the record about George's intent in making the 2012 transfer is outweighed by consideration of the other factors that weigh, upon an undisputed record regarding same, in the United States' favor, that Biogenesis Church was George's fraudulent nominee.

### D. Remedy

The UFTA permits a creditor who has established a fraudulent transfer to recover a judgment valued by either "the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less." Mass. Gen. L. c. 109A, § 9(b). The 2003 transfer was less than George owed the IRS at the time of the levy. Thus, the judgment the IRS would have obtained in a fraudulent transfer claim, and accordingly the extent of its fraudulent transfer defense against Biogenesis Church's wrongful levy claim, is measured by the value of the 2003 transfer – $7.7 million. With respect to the additional $100,000 the IRS levied, the United States argues it should be entitled to "adjustment as the equities may require" of the fraudulent transfer amount of $7.7 million. Mass. Gen. L. c. 109A, § 9(c). The Court concludes that the equities weigh in favor of the United States. First, in balancing the equities, the Court may consider the absence of any

statutory affirmative defense asserted by the transferee. Bakwin, 467 Mass. at 651–52 (2014). Biogenesis Church does not raise any of the UFTA's three statutory defenses to a fraudulent transfer claim. Mass. Gen. L. c. 109A, § 9(f). Furthermore, George's conduct in refusing to pay his tax liability has caused the United States to deploy resources into criminal and civil investigations, assessments and litigation, vindicated in establishing George's liability at every turn, over the course of more than twenty years from the earliest accrual dates until the levy was executed in 2016. Even still, George's tax liability will remain partially unsatisfied. Biogenesis Church has not identified any equitable concern outweighing the burden imposed on the United States in recovering this amount. Accordingly, the United States can retain the entire levied amount as equity requires.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion for summary judgment, D. 22.

**So Ordered.**

                                                     /s/ Denise J. Casper
                                                   United States District Judge